CASANUEVA, Judge.
Keith and Lucy Johnson (the Johnsons) appeal a final judgment in favor of Aqua Pool Co., Inc. (Aqua Pool), foreclosing a construction lien. We determine that the trial court did not fully assess the adverse impact the Johnsons suffered because of the errors appearing on the face of Aqua Pool’s claim of lien. Accordingly, we reverse the final judgment entered on behalf of Aqua Pool and remand for further proceedings.
On December 12, 1994, the Johnsons contracted with Maxson Construction (Maxson) to build a single family dwelling with a swimming pool. Maxson subcontracted with Aqua Pool to build the pool. Aqua Pool fulfilled its contractual duties but Maxson ceased business operations without completing the project. Because of a lack of payment from either Maxson or the Johnsons, Aqua Pool filed a claim of lien against the property. It thereafter filed this action to foreclose its construction lien under Chapter 713, Florida Statutes (1995), (count I) or, alternatively, an action for damages for unjust enrichment (count II) or quantum meruit (count III). The Johnsons defended on the basis that Aqua Pool’s claim of lien, on its face, showed that the notice to owner was untimely, and, therefore, the claim of lien was invalid. The trial court concluded that the Johnsons were entitled to rely on this facial invalidity in 1995 in refusing to pay,[1] but that they were not adversely affected because they still had funds to pay for the pool after paying all *459 facially valid claims. The trial court found that Aqua Pool had prevailed under the construction lien count and no judgment was entered on the remaining counts. The final judgment awarded Aqua Pool the value of its labor, services, and materials for building the pool ($14,498), costs ($226.33), and attorney’s fees ($6,774.55).
The issue presented in this appeal, the construction of the term “adverse effect,” has its genesis in the statutory interplay between section 713.06(2)(a)[2] and section 713.08(4)(a).[3] The former statute requires, as a prerequisite to perfecting a lien, that a notice to owner be served not later than 45 days from the date of first providing services or materials. It further specifies that untimely service of notice constitutes a complete defense to enforcing the lien. The latter statutory provision, in contrast, grants the trial court the discretion to excuse errors in a claim of lien when those errors do not cause an adverse effect to the owner. Clearly, the legislative intent of the latter provision is to excuse minor technical errors and permit recovery when it is equitable to do so. This ameliorates the harsh effect of the former statute upon contractors or materialmen by permitting recovery under the lien law even though the contractor or materialman did not comply with the statute.
Aqua Pool’s claim of lien contained numerous errors, the most serious of which was an erroneous date for its first provision of labor, services, and materials. This date, when coupled with the date of service of its notice to owner, allowed the Johnsons to conclude that the notice was not timely filed. Section 713.06(2)(a) requires the timely filing of the notice in order to perfect a lien. Thus, on its face, Aqua Pool’s claim of lien did not show proper compliance with the statutory prerequisites. That the service of the notice to owner was, in fact, timely was not ascertained until trial. There, the trial court made a specific factual finding that the claim of lien contained a scrivener’s error in the date Aqua Pool first began to work on the project. The other less substantive errors in the claim of lien were that the notice to owner had been provided to the Johnson’s lender, when there was no such lender, and the signature on the claim of lien was notarized on September 10, 1995, although the claim itself was dated a day later.
The construction lien law set forth in Chapter 713 must be strictly construed. See Zalay v. Ace Cabinets of Clearwater, Inc., 700 So.2d 15 (Fla. 2d DCA 1997). Conceptually, the lien law seeks to assign the risk of loss. Ultimately, where “one of two innocent persons must suffer as a result of the default of another, the loss shall fall on him whose act made the loss possible.” Alton Towers, Inc. v. Coplan Pipe and Supply *460 Co., 262 So.2d 671, 673 (Fla.1972) (quoting with approval Bryan v. Owsley Lumber Co., 201 So.2d 246, 250 (Fla. 1st DCA 1967)).
Accordingly, we conclude the trial court properly determined that there had been no detrimental impact upon the funds the John-sons possessed to satisfy outstanding claims of lien. We hold, however, that the trial court erred by restricting its evaluation of adverse effect to that sole factor. The court should have weighed other circumstances, including the Johnson’s exposure to liability for the payment of Aqua Pool’s attorney’s fees and costs, which resulted from Aqua Pool’s inaccurately prepared claim of lien.
Like a phoenix rising from its ashes, Aqua Pool’s moribund claim of lien rose to life at the moment the trial court determined the notice to owner had, in fact, been timely served. Until that resuscitating moment at trial, Aqua Pool was without an enforceable lien. It would be inequitable then to assess against the Johnsons Aqua Pool’s attorney’s fees and costs incurred prior to the establishment of the lien’s validity. This financial loss should fall on the party at fault — Aqua Pool. See Alton Towers.
On remand, the trial court must consider this and all other factors submitted by the parties on the legal issue of an adverse effect. Because these matters are uniquely factual, we can provide no all-inclusive list. We simply hold that, under the facts of this case, for the Johnsons to pay the attorney’s fees and costs that Aqua Pool incurred prior to the moment the trial court factually determined that their claim of lien was valid and enforceable constitutes an adverse effect under the statute.
On remand, should the trial court conclude that this adverse effect, or any other, is sufficient to preclude the foreclosure of the lien, it should enter judgment accordingly, and proceed to resolve the remaining counts of the complaint.
WHATLEY, A.C.J., and NORTHCUTT, J., Concur.

. Furthermore, the trial court never found that the Johnsons should have ceased to rely on the defective claim of lien.

. Section 713.06(2)(a) provides:
All lienors under this section, except laborers, as a prerequisite to perfecting a lien under this chapter and recording a claim of hen, must serve a notice on the owner setting forth the lienor’s name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished. A sub-subcontractor or a materialman to a subcontractor must serve a copy of the notice on the contractor as a prerequisite to perfecting a lien under this chapter and recording a claim of lien. A mate-rialman to a sub-subcontractor must serve a copy of the notice to owner on the contractor as a prerequisite to perfecting a lien under this chapter and recording a claim of lien. A mate-rialman to a subsubcontractor shall serve the notice to owner on the subcontractor if the materialman knows the name and address of the subcontractor. The notice must be served before commencing, or not later than 45 days after commencing, to furnish his services or materials, but, in any event, before the date of the owner’s disbursement of the final payment after the contractor has furnished the affidavit under subparagraph (3)(d)l. The notice must be served regardless of the method of payments by the owner, whether proper or improper, and does not give to the lienor serving the notice any priority over other lienors in the same category; and the failure to serve the notice, or to timely serve it, is a complete defense to enforcement of a lien by any person. The serving of the notice does not dispense with recording the claim of lien. The notice is not a lien, cloud, or encumbrance on the real property nor actual or constructive notice of any of them.

. Section 713.08(4)(a) provides:
The omission of any of the foregoing details or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected by such omission or error.